THE MANUFACTURERS AND MERCHANTS' INSURANCE
COMPANY

*v.*

THOMAS M. ARMSTRONG *et al.*

*Filed at Ottawa, June 19, 1893.*

1. INSURANCE—*power of agent to waive conditions.* When a general agent of an insurance company has the authority to issue a policy with or without certain conditions, such agent may, by contract with one assured, waive the performance of such conditions for such time as he may think proper.

2. Where a policy of insurance had been issued by the general agents of an insurance company, to which was attached certain conditions, that, unless certain appliances should be placed on the premises within sixty days to guard against fire, and to be used in extinguishing fire, the policy should be void, the insured, before acceptance of the policy, informed the agents of the insurer that it was impossible to provide the appliances within the sixty days, and the latter replied that the assured should go on and do the best they could, whereupon the policy was accepted, and a loss occurred before the conditions were fully performed: *Held,* that the agreement amounted to a waiver of the time of performance of the conditions, notwithstanding the policy contained a clause that no waiver of any condition should be valid unless written upon or attached to the policy, which was not done.

3. SAME—*waiver of forfeiture.* A provision in a policy of insurance that it shall become void in a certain event, will not render the policy absolutely void upon the happening of such event; such a provision being for the benefit of the insurer, it may be waived by the latter, and when this is done, neither the insured nor third parties can claim that the insurance is void.

4. If an insurance company, through its general agents, with the knowledge that the assured have not complied with the condition of the policy in regard to making improvements for the protection of the property insured, recognizes the policy as in full force, and leads the assured to believe that they are protected, it will be estopped from relying on a breach of the condition as a defense to an action for a loss. In such case, if the company does not regard the policy as in force, it is its duty to notify the assured, cancel the policy, and return the unearned part of the premium.

5. Any acts, declarations or course of dealing by the insurers, with a knowledge of the facts constituting a breach of a condition of the

policy, recognizing the policy as still valid, and from which the insured might fairly infer that he was protected, will amount to a waiver of such breach, and estop the insurers from setting it up in defense.

Appeal from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Winnebago County; the Hon. James Shaw, Judge, presiding.

Mr. Myron H. Beach and Mr. A. D. Early, for the appellant:

Contracts in reference to insurance should be interpreted in accordance with the law applicable to ordinary contracts. *Aurora Fire Ins. Co.* v. *Eddy,* 49 Ill. 106.

The effect of stipulations against waivers of forfeitures, unless in writing and endorsed on policy, as well as the manner in which they may be modified or waived by agents of the company, has been so thoroughly discussed and so clearly pointed out that a reference to some of the recent cases only will be made. *Allen* v. *Ins. Co.,* 123 N. Y. 6; *Quintan* v. *Ins. Co.,* 123 N. Y. 356; *Messelback* v. *Norman,* 122 N. Y. 583; *Walsh* v. *Ins. Co.,* 73 N. Y. 5; *Marvin* v. *Ins. Co.,* 85 N. Y. 278; *Cleaver* v. *Traders Ins. Co.,* 65 Mich. 527; *Gould* v. *Dwelling House Ins. Co.,* 90 Mich. 302.

A policy contained the following provision: "If the assured shall hereafter make any other insurance on the same property, and shall not, with all reasonable diligence, give notice thereof to this company, and have the same indorsed on this instrument or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect." After accepting the policy, assured obtained other insurance and notified the agent, who told him it would make no difference if it was not endorsed upon the policy in writing. *Held,* no waiver on the part of insurer. *Worster Bank* v. *Hartford Fire Ins. Co.,* 11 Cush. 265; *Forbes* v. *Agawam Mut. Fire Ins. Co.,* 9 Cush. 265; *Kyte* v. *Commercial*

*Union Ass. Co.*, 144 Mass. 43; *Hall* v. *Mechanics Mut. Fire Ins. Co.*, 6 Gray, 169.

By the terms of the policy the contract ceased at the expiration of the sixty days, unless the requirements were performed. To make a contract binding upon the parties, all conditions precedent must be complied with. Wood on Fire Ins., sec. 144 (2d Ed.); *Baird* v. *Evans*, 20 Ill. 29; *Stone* v. *Howard Ins. Co.*, 153 Mass. 475; *Keith* v. *Quincy Mut. Ins. Co.*, 10 Allen, 228; *Herman* v. *Ins. Co.*, 85 N. Y. 162; *Savage* v. *Ins. Co.*, 52 N. Y. 502; *New Market Savings Bank* v. *Royal Ins. Co.*, 150 Mass. 374.

To establish a waiver of forfeiture the proof must show a distinct recognition of the validity of the policy after knowledge of the forfeiture by the person by whom it is claimed the forfeiture was waived. *Weed* v. *London & L. Co. Fire Ins. Co.*, 116 N. Y. 106.

If appellees rely upon a waiver after forfeiture, they must show appellant did some act which plainly affirmed the continuance of the policy, even without a printed stipulation, as in this case. It is not enough to bring the matter into doubt. *Smith* v. *Saratoga Co. Fire Ins. Co.*, 3 Hill, 508.

A policy of insurance was written upon property known to the insurer to be vacant at the time. In the body of the policy was written: "Permission to remain vacant thirty days without prejudice." *Held*, that the contract was one for indemnity for thirty days only, and the property then remaining vacant, the policy ceased to exist and became void, and loss occurring afterward, no recovery could be had. *New Market Savings Bank* v. *Royal Ins. Co.*, 150 Mass. 374.

When it is a condition of the policy that in case of other insurance without consent of the insured the risk ceases, courts will give support thereto, and the risk terminates absolutely. *Continental Ins. Co.* v. *Hulmann et al.*, 92 Ill. 145–156; *American Ins. Co.* v. *Foster*, 92 id. 334.

Likewise as to conditions covering assignment without consent of insurer. *Smith* v. *Saratoga Mut. Fire Ins. Co.*, 1 Hill, 497.

Mr. CHARLES A. WORKS, for the appellees:

The general agents of an insurance company can employ a clerk or sub-agent to perform the duties of their agency and make his acts binding upon the company. *Continental Ins. Co.* v. *Ruckman*, 127 Ill. 364; *Life Ins. Co.* v. *Fahrenkrug*, 68 id. 463.

It was not necessary to a valid waiver, after an acceptance of the policy, that it should be in writing. Montgomery & Co., the authors of the requirements, could legally extend the time of performance by parol, or, after the expiration of the sixty days, waive the right to treat the contract as forfeited. *Ill. F. Ins. Co.* v. *Stanton*, 57 Ill. 354; *Reaper City Ins. Co.* v. *Jones*, 62 id. 458; *Ins. Co.* v. *Garland*, 108 id. 220; *Williamsburg Ins. Co.* v. *Cary*, 83 id. 453; *Germania Ins. Co.* v. *Klewer*, 129 id. 599; *Phœnix Ins. Co.* v. *Johnston*, 42 Ill. App. 66.

If with full knowledge of the facts constituting the breach of the condition the insurance company or their general agents recognized the policy as still in force by such acts, declarations and course of dealing with the insured as would fairly lead him to believe that he was protected, then such acts, etc., would amount to a waiver of the breach, and estop the insurer from setting it up as a defense. 2 May on Ins., 1143, sec. 497; *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9; *Ill. F. Ins. Co.* v. *Stanton, supra.*

The fact that the insurers do not cancel the policy under a provision therefor, when knowledge comes to them of its violation, is evidence of an intention to waive such violation. *Williamsburg City Ins. Co.* v. *Cary*, 83 Ill. 453; *Teutonia Life Ins. Co.* v. *Anderson*, 77 id. 384; *Mut. Life Ins. Co.* v. *French*, 30 Ohio St. 240; *Joliffe* v. *Madison Ins. Co.*, 39 Wis. 111; *North British Ins. Co.* v. *Steiger*, 124 Ill. 81.

MAN. & MERCH. INS. CO. *v.* ARMSTRONG *et al.* 473

Brief for the Appellees. Opinion of the Court.

A chief contention in this case, on the part of appellant, seems to be that, at the expiration of the sixty days specified in the requirements, the policy became void and dead, and could not be revived except by a new contract. We submit this position is not tenable, and refer the court to the following cases in support of our position: *Viele* v. *Germania Ins. Co.*, 29 Iowa, 9; *Georgia Home Ins. Co.* v. *Kinney's Adm.*, 28 Grat. (Va.), 88; *Shafer* v. *Phœnix Ins. Co.*, 53 Wis. 361; *North Berwick Co.* v. *Ins. Co.*, 52 Me. 336; *Canada Landed, etc. Co.* v. *Canada Agric. Ins. Co.*, 17 Grant's Chancery, 418; *N. E. F. & M. Ins. Co.* v. *Schettler*, 38 Ill. 166; *Reaper City Ins. Co.* v. *Jones,* 62 id. 458; *Chicago Life Ins. Co.* v. *Warner*, 80 id. 410; *Williamsburg City Ins. Co.* v. *Cary*, 83 id. 453; *N. British & M. Ins. Co.* v. *Steiger*, 124 id. 81.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by appellees on a policy of insurance, in which certain property, located at Petoskey, Michigan, was insured against loss from fire. P. A. Montgomery & Co. were the general agents of the insurance company at Chicago, and in May, 1889, C. M. Fay, a member of plaintiffs' firm, applied to P. A. Montgomery & Co., at their office in Chicago, for insurance on their Michigan property. He was referred to Mr. Tyndall, an employé in the office, as a proper person with whom the negotiation for insurance might be conducted. In October, 1889, the insurance company sent an inspector to Petoskey to inspect appellees' plant, with a view of insuring the property. After the inspector had made a report, P. A. Montgomery & Co., under date of October, 24, 1889, wrote to appellees in relation to the insurance, and in this letter they were informed that they would have to put in their plant, within sixty days, certain appliances to guard against fire, and to aid in extinguishing fire. Having received this communication, Fay went to Chicago to see P. A. Mont-

gomery & Co. In the meantime, viz., on October 29, they had mailed the policy upon which suit is brought to appellees at Petoskey. Going to the office of P. A. Montgomery & Co., Fay had a conversation with Tyndall, to whom he had always been referred, and with whom he had transacted all his former business relating to insurance written by P. A. Montgomery & Co.

In that conversation he told Tyndall that it would be impossible to carry out the requirements within sixty days, to which Tyndall replied that they should go on and *do the best they could.* Fay asked Tyndall what the rate should be when the requirements had been complied with, and Tyndall said they should then have a rate of $2.50, being forty cents less than the rate given in the policy that had been mailed the day before.

After this conversation Fay, in company with Tyndall, went out in the city to investigate the appliances required to be placed in the plant, and, after investigation, contracts were made for the required appliances. After investigating the appliances Fay, upon being assured by Tyndall that he would not be required to have them put in within the specified time, notified Tyndall that he would accept the policy. The policy contained this provision: "It is a condition of this insurance that the following improvements shall be completed within sixty days of date hereof, or policy will be null and void." Following this are 17 different specifications written out by Montgomery & Co., and attached to the policy. The policy, also, contains the following:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions

and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached.''

The contemplated improvements, to be placed in the plant were not completed within sixty days from the date of the policy, and the property was burned on the 14th day of March, 1890. At the time of the fire the improvements were substantially completed, but they had not been inspected and formally turned over to the assured.

The defense interposed to the action in the policy was a failure of the assured to construct in and upon the property insured, certain appliances to guard against fire, and to be used in extinguishing fire, within sixty days from the date of the policy, as was provided by certain conditions attached to the policy at the time it was issued by the agents, Montgomery & Co. These conditions were no part of the policy as it was originally prepared by the company, but it appears from the evidence that they were written out on a separate piece of paper by the agents, and then attached to the policy by them. The evidence also tends to show that before the policy was accepted the agents of the company waived a compliance with the conditions within the sixty days, and that the assured accepted the policy under an agreement that the requirements should be complied with, not within sixty days, but within such time as the assured could reasonably have the appliances made and placed on the property.

The first question, therefore, to be considered is whether the conditions of the policy attached thereto by the agents, requiring the improvements to be placed upon the plant within sixty days, have been waived. The policy contains a provision, in substance, that no waiver of any condition shall be valid, unless written upon or attached to the policy,

nor shall any privilege or permission affecting the insurance exist or be claimed by the insured, unless so written or attached. When and under what circumstances the conditions of a policy may be waived by the general agents of the company has been much discussed in the courts, and the decisions are not harmonious on the question.

*Viele* v. *Germania Ins. Co.*, 26 Iowa, 9, is an interesting case on the subject. It was there held, that a condition in a policy of insurance that, if the risk be increased by a change of occupation or other means within the control of the assured, without the written consent of the insurers, the policy shall be void, being inserted for the benefit of the insurers, they may dispense with a compliance therewith or waive a forfeiture of the policy incurred by a breach thereof, and thereby become estopped from setting up such condition or breach. It was also held, that such waiver of the forfeiture arising from the breach of the condition, need not be in writing but may be by parol. That any acts, declarations or course of dealing, by the insurers, with knowledge of the facts constituting a breach of a condition in the policy, recognizing and treating the policy as still in force, will amount to a waiver of the forfeiture, and estop the company from setting up the same as a defense. It was also held, that a local agent clothed with authority to make contracts of insurance, fix rates, etc., had power to waive forfeitures.

In *German Ins. Co.* v. *Gray*, 43 Kans. 497, where the policy contained a provision, that no agent of the company, or any other person than the president or secretary, should have authority to alter or waive any of the terms or conditions of the policy, or make any endorsement thereon, and all agreements of the president or secretary must be signed by either of them, it was held, that this provision may be modified by the company to the same extent as any other; and whatever the company can do, may be done by its general agents. Among other things, the court said:

Man. & Merch. Ins. Co. *v.* Armstrong *et al.* 477

Opinion of the Court.

"If it was within the power of the company, acting through its agents, to waive a condition or change the contract, it surely might do so by parol, and might even waive the provisions stated in the policy, with reference to the manner of altering or waiving its terms and conditions."

In *Insurance Co.* v. *Earl*, 33 Mich. 144, the question arose whether an agent of the company could change by parol the conditions of a policy, which provided it could only be done by the consent of the company written thereon. The court held, that a written bargain is of no higher legal degree than a parol one, and either may vary or discharge the other; and one who has agreed that he will only contract in writing, in a certain way, does not thereby preclude himself from making a parol bargain to change it; that there is no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing.

In *Shafer* v. *Phœnix Co. of Boston*, 53 Wis. 302, the policy contained the following: "The use of general terms, or anything less than a distinct special agreement clearly expressed and endorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction herein, and whenever this policy may have become void from any cause, it shall not be revived or reinstated by the issue of any renewal certificate or receipt, or in any other way, except by special contract for such reinstating in writing thereon, or by the issuing of a new policy." *Held*, "it was competent for the agent, acting in behalf of the defendant, to waive those as well as other conditions of the policy."

In *Georgia Home Ins. Co.* v. *Kinney's Admrx.*, 28 Gratt. (Va.) 88, on discussion of the existence of the waiver of a condition in a policy, it is said:

"Such waiver or estoppel (for the terms, 'waiver' and 'estoppel,' may be indifferently used in application to the subject we are now considering) may take place either pending the negotiation for the policy, or after such nego-

tiation has been completed, and during the currency of the policy, and either before or after forfeiture incurred. Such waiver may be made by a general agent acting within the scope of his powers, needs no consideration to support it, and may be by parol, although the written consent of the insurer is required by the terms of the policy."

As has been seen, the conditions involved were incorporated into the policy by the agents, Montgomery & Co. They had the authority to issue the policy with or without the conditions. They might have left out of the policy a part or all of the conditions, and having this authority, no reason is perceived why they might not, by contract with the assured, waive a performance of the conditions for such time as they might think proper.

Appellant's counsel have cited certain cases: *Baumgartel* v. *Providence - Washington Ins. Co.*, 136 N. Y. 547; *Allen* v. *Ins. Co.*, 123 N. Y. 6; *Quintan* v. *Ins. Co.*, 123 N. Y. 356; *Messelback* v. *Norman*, 122 N. Y. 583; *Walsh* v. *Ins. Co.*, 73 N. Y. 5, as holding a different rule. These cases do, in substance, hold, where a policy of insurance contains a provision that no officer, agent or representative of the company shall be held to have waived any of the terms or conditions of a policy, unless such waiver shall be in writing and endorsed on the policy, that a waiver will not be binding, unless made and endorsed as required by the policy.

We are not, however, inclined to apply the doctrine of these cases to the case under consideration. It is apparent from the evidence that the general agents, Montgomery & Co., who issued this policy and incorporated the conditions relied upon in the policy, themselves, agreed with the assured, before the policy was accepted, that they would not require the improvements to be completed within sixty days, and it would be a fraud on the insured to allow the company to repudiate the agreement upon which the policy was accepted by them.

There is another fact which has an important bearing on the decision of this case. It is claimed that the insurance company knew that the assured had not complied with the condition of the policy in regard to making the improvements, and knowing this fact, it recognized the policy as in full force, and led the assured to believe that they were protected, and under such circumstances the company is estopped from relying on a breach of the condition of the policy as a defense. It appears, that prior to October 24, 1889, Montgomery & Co. were carrying insurance in different companies for the assured, amounting to some $41,000. In their letter of October 24, they proposed to reduce the amount to $24,500. That letter also contained the following:

"I inclose you herewith list of requirements as made out by our Mr. Wardel, and we trust that you will comply with them as soon as possible, and when you get your plant in proper condition, and fully equipped, we will be willing to increase our lines again. The average rate at which we are writing these new policies, viz., $2.90, is pretty low in view of the present unfinished condition of the risk, but we will make no change in this now."

It seems to have been understood, that as soon as the required improvements should be placed in the plant, Montgomery & Co. would make another inspection with a view to increasing the insurance; but on February 12, some forty days after the expiration of the sixty days, within which the improvements were to be made, Montgomery & Co. write that they find it impossible to get the inspector there to pass on the sprinkler equipment until July. By return mail appellees reply, saying that won't do; that the sprinkler equipment will be completed from 5th to 10th of March, and must be inspected immediately; if they can not do it, some one must be found who can; that they desire $20,000 additional insurance, etc. Immediately the agents reply, saying they will have an inspector there March 10. "Keep

us informed, that we may not send a man there until you are ready for him. We can provide all the insurance you want when you are ready for it, but we can not state at what rates we can rewrite and place additional lines until after inspection is made.'' Appellees reply that they will keep the agents advised by letter or wire when they are ready for inspection, and on February 27 write that they will have the sprinkler system complete and ready for inspection March 3, and conclude, ''we have insurance expiring March 4, and desire a prompt inspection and adjusting of rates.''

From this correspondence it is plain, that after the expiration of the sixty days, and indeed up to the time of the fire, Montgomery & Co. knew that the required conditions of the policy had not been complied with, and yet they never intimated that the policy was not in force. If they did not regard the policy in force, it was their duty to notify the assured, cancel the policy, and return the unearned part of the premium; but although corresponding with the assured in regard to the completion of the required improvements, inspection of the same, and additional insurance, not a word was uttered which might lead the assured to suspect that the company regarded the policy at an end, on account of the failure of the assured to complete the improvements on the plant within the time specified in the policy.

''Any acts, declarations or course of dealing by the insurers, with a knowledge of the facts constituting a breach of a condition of the policy, recognizing the policy as still valid, and from which the insured might fairly infer that he was protected, will amount to a waiver of such breach, and estop the insurers from setting it up in defense.'' May on Insurance, vol. 2, sec. 497, p. 1143.

Without extending the discussion on this question, we are inclined to hold that the company is estopped from claiming a forfeiture by the acts and conduct of its general agents.

It is also claimed by appellants, that upon the expiration of the sixty days specified, the policy, by its own terms, became absolutely void. This position is not tenable. A provision in a policy of insurance, that it shall become void in a certain event, will not render the policy absolutely void upon the happening of such event. A provision of that character is made for the benefit of the insurer, and if the company does not wish to take advantage of the provision and avoid the policy, it may properly waive the forfeiture, and when this is done, neither the insured nor third parties can claim that the insurance is void. *Germania Fire Ins. Co.* v. *Klewer*, 129 Ill. 599; *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9. There may have been slight errors in the ruling of the court in the admission of evidence, but we find no substantial error in this regard, nor in the ruling of the court on the instructions.

The judgment of the Appellate Court will, therefore, be affirmed.

*Judgment affirmed.*